No. 23-1057

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

---

DAVID PEREZ, et al.,

Plaintiff-Appellant,

v.

CITY AND COUNTY OF DENVER, et al.,

Defendant-Appellee.

---

On Appeal from the United States District Court for the District of Colorado

No. 21-cv-01263-RMR-KLM, The Honorable Regina M. Rodriguez

---

## APPELLANTS' OPENING BRIEF
### (Oral Argument is Requested)

---

David Perez
619 12th St #348
Golden Colorado 80401

(303) 433-2702
perezda@me.com

Pro-se Plaintiff-Appellant

1 May 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

INTEREST OF THE UNITED STATES ........................................... 1

STATEMENT OF PRIOR OR RELATED APPEALS ...................... 1

STATEMENT OF JURISDICTION ................................................ 2

STATEMENT OF THE ISSUE ....................................................... 3

STATEMENT OF THE CASE ......................................................... 4

     I.     FACTUAL BACKGROUND ................................................ 3

     II.    PROCEDURAL BACKGROUND ...................................... 10

     III.   RULING PRESENTED FOR REVIEW ............................. 11

STANDARD OF REVIEW .............................................................. 12

ARGUMENT

     I .    The district court incorrectly dismissed the Plaintiff's claims
          for failure to exhaust administrative remedies. .......................... 13

     II.    Equitable tolling requires a party to satisfy two distinct
          elements which the Plaintiff has met. ..................................... 18

     III.   Defendant cannot cure Answer deficiency in their Reply
          Brief. .............................................................................. 20

     IV.   Defendant arguments are partial and misleading ...................... 25

CONCLUSION ............................................................................... 28

STATEMENT REGARDING ORAL ARGUMENT ...................... 29

CERTIFICATE OF COMPLIANCE .............................................. 30

CERTIFICATE OF ELECTRONIC FILING ............................................ 31

CERTIFICATE OF SERVICE .................................................................. 32

## TABLE OF AUTHORITIES

Cases                                                                    Page(s)

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ............................................................................ 20

Bank of New York Mellon Trust v. Morgan Stanley Mortgage,
    No. 14-2619 (2d Cir. 2016) ............................................................... 22

Brooks v. Denver Pub. Sch.,
D. Colo. (2017) ..................................................................................... 21, 25

D.L. v. Unified Sch. Dist.
    No. 497, 596 F.3d 768, 772 (10th Cir. 2010) ................................. 11

Green v. Brennan,
    No. 13-1096 (10th Cir. 2016) ........................................................... 24, 26

Ingels v. Thiokol Corp.,
    42 F.3d 616, 625 (10th Cir. 1994) ................................................... 14, 19

Jones v. Bock,
    549 U.S. 199 (2007) .......................................................................... 20, 22, 25

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,
    507 U.S. 163 (1993) .......................................................................... 20, 25

Lincoln v. BNSF Railway Company,
    No. 17-3120 (10th Cir. 2018) ........................................................... 13

Madu, Edozie & Madu, P.C. v. SocketWorks Ltd.
    (S.D.N.Y. 2010) ................................................................................ 22

MacKenzie v. City & County of Denver,
    414 F.3d 1266, 1274 (10th Cir. 2005) ............................................. 14, 19

Menominee Tribe of Indians v. United States,
   391 U.S. 404 (1968) ................................................................ 18, 29

Qwest Commc'ns Int'l, Inc.,
   396 F.Supp.2d 1178, 1203 (D. Colo. 2004) ............................. 24

Quackenbush v. Allstate Ins. Co.,
   517 U.S. 706, 713 (1996) ......................................................... 1

Rodriguez v. Wet Ink,
   LLC, 603 F.3d 810, 813 (10th Cir. 2010) ............................... 1, 10

Sias v. City Demonstration Agency,
   588 F.2d 692, 695 (9th Cir. 1978) ........................................... 15

Strike, LLC, v. Sandy Creek Farms,
   Inc., (W.D. Okla. 2021) ............................................................ 23

Toone v. Wells Fargo Bank, N.A.,
   716 F.3d 516 (10th Cir. 2013) ................................................. 14

Statues

28 U.S.C. App Fed R App P Rule 29(a) ......................................... 2

28 U.S.C. §§App Fed R Civ P Rule 8, Rule 8(a) ........................... 20

28 U.S.C. § 1291 ........................................................................... 1

42 U.S.C. § 2000e ........................................................................ 1, 2, 13

42 U.S.C. § 12101 ........................................................................ 1, 13

42 U.S.C. § 12203(a) .................................................................... 1, 13

42 U.S.C. § 1983 ........................................................................... 2, 13

Regulations

Colo. Rev. Stat. § 24-34 ................................................................ 1, 2, 13, 17, 21

RULES

Rule 12(b)(6) ................................................................................................... 13

## INTEREST OF THE UNITED STATES

The United States has a direct and substantial interest in the proper interpretation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, Americans with Disabilities Act 42 U.S.C. §12101, 12203 and the handling of state anti-discrimination laws similar to the Colorado's Anti-Discrimination Act (CADA), Colo. Rev. Stat. § 24-34 that arise in this case. Federal courts of appeal have jurisdiction pursuant to 28 U.S.C. § 1291 of a district court's abstention from exercising jurisdiction over a matter because it is a 'final decision' that puts the litigants 'effectively out of court.'" (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 713 (1996)).

This case presents severely important question as to when does an employee exhausts their administrative remedies by timely filing a charge of discrimination due to inconsistencies of the administrative process, does the failure to state that one has received a notice of right to sue letter in a complaint offer an affiliative defense to support an Order on Motion to Dismiss or Final Judgment, can a defendant cure their Answer deficiency in their Reply Brief, and does informing supervisors of an employee's termination date that has been already determined by an employee start the clock for a timely discrimination complaint to be filed.

## STATEMENT OF PRIOR OR RELATED APPEALS

There are no prior or related appeals.

## STATEMENT OF JURISDICTION

The Appellant files this brief under Federal Rule of Appellate Procedure 29(a). The district court had original jurisdiction over Appellants' claims pursuant to Title VII 42 U.S.C. § 2000e, because Appellants' claims arise under the United States Constitution, thus raising multiple federal questions. The district court also had jurisdiction under A.D.A. 42 U.S.C. § 1983 and CADA, Colo. Rev. Stat. § 24-34 because the underlying action seeks redress for the deprivation of constitutionally protected rights by those acting under the color of state and/or municipal law.

On 7 February 2023, the district court issued an Order denying the Appellant's Opposed Motion for Leave to File Third Amended Complaint and Dismissed the case with Prejudice on the grounds that the Plaintiff's complaint "… fails to state a claim, and no amendment could cure the defect, a dismissal sua sponte may be appropriate." App. Vol 2 at 179-190.  Furthermore, the district court issued a Final Judgement on 7 February 2023 stating that Plaintiff's Opposed Motion for Leave to File Third Amended Complaint [ECF No. 42] is DENIED with a further order that this action is DISMISSED WITH PREJUDICE.  App. Vol 2 at 191.

On 21 March 2023, Appellant timely appealed the district court's Order. App. Vol 2 at 192.

## STATEMENT OF THE ISSUE

Knowing that he was subjected to Discrimination, Harassment and Retaliation acts from members of the Denver Fire Department and other City agents employed by the Defendant, the Appellant filed two complaints with the EEOC. App. Vol 1 at 226, Vol 2 at 141.  In conjunction with the Appellant's first filed EEOC complaint, a complaint was also filed with the CCRD. App. Vol 1 at 66, 228.  All complaints were filed with due-process and the Plaintiff has satisfied the required administrative-complaint procedures established by the rules and regulations that are subject to this matter.

## STATEMENT OF THE CASE

### I.    FACTUAL BACKGROUND

Appellant-Plaintiff is a decorated veteran of the United States Marine Corps (USMC) with over 15 years of active and reserve military service.  App. Vol 1 at 9, 11, 46, 70, 153 (¶¶ 1, 12, 4, 3, 3).  Plaintiff was deployed overseas three times, two of which were in a combat zone serving in Iraq.  Plaintiff was also a Firefighter with the Denver Fire Department (DFD) for over 13 years.  App. Vol 1 at 98, 154 (¶¶ 2, 3) Vol 2 at 54, 59, 107 (¶¶3, 33, 1).  Plaintiff is a disabled Veteran of the United States Military and has been determined permanently disabled through the Fire & Police Pension Association of Colorado (FPPA). App. Vol 1 at 153-154 (¶¶ 2, 3).

On 13 March 2019 Plaintiff suffered a Line of Duty (LOD) injury while performing his duties as a firefighter for the Defendant.  App. Vol 1 at 111, 159, 211,

213 (¶¶ 24, 243, I, II-1), Vol 2 at 61 (¶39).  Plaintiff suffered a debilitating crush injury to his right dominate hand while mitigating a house fire from the use of a 10lb sledgehammer when another crew ignored the Plaintiffs order to stop their attempt of breaching a door. Plaintiff filed a Workers Compensation claim with the Defendant for this witnessed LOD injury.  Plaintiff suffered a full thickness partial tear and large avulsion of the hand muscle and partial fracture to his sesamoid bone with his right hand, was placed in a cast and was put on light-duty with work restrictions of "No use of right hand." App. Vol 1 at 159.  The Defendant excepted the Workers Compensation (WC) Claim made by the Plaintiff and this injury was seen as a LOD injury by the Defendant.  App. Vol 1 at 160 (¶ 28).

On 8 April 2019, the day the Plaintiff had his cast removed but still on full restriction of "No use of right hand", the Defendant violated the Plaintiff's work restrictions when an Administrative Lieutenant ordered Plaintiff to hand write over 200 inspections' (Handwriting Incident) on a log sheet that was specifically made for the Plaintiff.  Not only was this unnecessary because the inspections were already being tracked and completed digitally on an iPad, but this also violated Plaintiff's work restrictions of "No use of right hand." App. Vol 1 at 161 (¶34).  Defendant does not deny that they violated the Plaintiff's work restriction with this punishment.  The Administration Lieutenant has admitted to enforcing this punishment as he stated in an email "I developed a spread sheet that could be hand written [sic] to track his completed inspections ... I instructed FF Perez to fill out the Mod Inspection Spreadsheet for

businesses he would complete for the day." This punishment would acerbate the Plaintiff's injury and cause permanent injury to the plaintiff's hand. App. Vol 1 at 163 (¶39).

After three months of self-therapy and rehab since the Defendant had not authorize any medical rehabilitation opportunities for the Plaintiff up until this point, Plaintiff met with his occupational health provider on 19 June 2019. App. Vol 1 at 163 (¶¶ 2, 39).

It was determined that any future treatment or physical therapy regarding Plaintiff's LOD injury to his right hand would be focused on pain management and rehabilitation. Plaintiff was also informed that the pain and physical symptoms he was experiencing in his hand was likely to be long-term and that his condition may never improve.  App. Vol 1 at 165 (¶46). The Plaintiff returned to full duty on 20 June 2019. App. Vol 1 at 160 (¶29), Vol 2 at 55, 67 (¶48, 61).

In July 2019, Defendant finally authorized Plaintiff to begin physical therapy.  On 16 July 2019, Plaintiff began therapy for the LOD injury the Plaintiff suffered, four months after his initial injury and three months have the acerbation of his injury from the Handwriting Incident. App. Vol 1 at 55 (¶48).

On 24 September 2019, Plaintiff's medical provider determined that his LOD injury and pain symptoms were a safety concern, and that Plaintiff could no longer be in a safety sensitive position unless further evaluation determined otherwise.  Plaintiff's medical provider placed Plaintiff back on light duty with temporary work restrictions

of "No use of right hand." App. Vol 1 at 55-56 (¶¶48, 49).

On 7 October 2019, Plaintiff received a phone call from the Admin Lieutenant informing him he was being assigned to a scanning project where the Plaintiff's sole duty and responsibility was to remove staples from paper. App. Vol 1 at 56 (¶54). While performing these tasks, comments were made by some of Plaintiff's colleagues which include but not limited to, "looks like you are in time out, who did you piss off?" … "you know, if you keep pulling staples, you are going to get carpal tunnel" … "man, you are getting paid well for slave labor." App. Vol 1 at 58 (¶56).

On 17 October 2019, Plaintiff filed a complaint with the CCRD. In conjunction with this filing, a dual filing was made with the EEOC (Initial Complaint). App. Vol 1 at 63. The Equal Employment Opportunity Commission (EEOC) and the Colorado Civil Rights Division (CCRD) have entered into a workshare agreement whereby each agency acts as the other's agent for the purpose of receiving and drafting employment discrimination charges. See Rodriguez v. Wet Ink LLC.

 In retaliation of the Plaintiff filing a complaint, the Defendant would deny further workers compensation and benefits for the Plaintiff's LOD injury. On 22 October 2019, Plaintiff received a letter from the Colorado Department of Labor (CDOL) and Employment's Division of Workers' Compensation that the City had denied the Plaintiffs WC claim and was contesting that his injury was job related. App. Vol 1 at 26, 57, 120, 167(¶¶52, 51, 40, 50).

On 5 December 2019, Plaintiff reported to the Center for Occupational Safety

and Health (COSH) clinic and stated he had pain symptoms in his left hand from pulling staples for six plus hours a day for the last two months.  App. Vol 1 at 122, 169 (¶¶56, 56). On this same date, Plaintiff sent an email to the CCRD with his first request to amend his complaint for the continued harassment and discriminatory taken on by the Defendant. App. Vol 1 at 216, 233 (¶15, Email).

On 6 December 2019, Defendant used Plaintiff's work-related injury that was caused by their direct actions to place Plaintiff on Leave Without Pay (LWOP).  App. Vol 1 at 123, 170, 216 (¶¶59, 59, 12).

On 21 January 2020, being on LWOP for nearly a month and falling into a financial hardship, Plaintiff had to apply for public assistance through the Jefferson County Human Service office. App. Vol 1 at 124, 171 (¶¶63, 63).  Since Plaintiff was still employed with the Defendant, Plaintiff was ineligible for public assistance and could not receive any financial or family assistance to offset the loss in pay and lessen the financial burden the Defendant had put on Plaintiff and his family form being put on LWOP.

On 23 January 2019, Plaintiff submitted a request for a hardship transfer to the Chief of Department, in efforts to return to work.  Being on LWOP for over a month was causing a financial hardship, which this transfer request was denied. App. Vol 1 at 66, 88, 125, 171 181, 204 (¶¶66, 20, 66, 66, 121, 20).

On 24 January 2019, Plaintiff was informed by the City's Safety Human Resource Department that the DFD requested the start of the Interactive Process (IAP) afforded

to the Plaintiff under the (ADA). App. Vol 1 at 60, 61 (¶¶69, 72).

On 27 January 2020, Plaintiff contacted the Defendants' Human Resources Department regarding his work and medical condition and the continued retaliator and discriminatory acts the Plaintiff was dealing with from members of the DFD administration. App. Vol 1 at 126, 173 (¶¶70, 70).  No follow-up or investigation was conducted to look into the Plaintiff's claim of a hostile work environment.

On 21 February 2020, Plaintiff reach out to the CCRD in attempt to amend his complaint for a second time with no action taken regarding this request. App. Vol 1 at 217, 235 (¶17, Email), Vol 2 at 56 (¶¶11).

On 02 March 2020, Plaintiff received a notice from the Departments Safety Human Resource office informing the Plaintiff that the IAP process was going to end, even before the 90 days the Defendant was required by law in assisting the Plaintiff with finding other employment opportunities within the City's other Departments. App. Vol 2 at 120 (Email).

At midnight on 3 March 2020, the Plaintiffs employment with the Defendant was terminated. App. Vol 1 at 123, 127 (¶¶50, 74).

On 28 May 2020, Plaintiff reach out to the CCRD in attempt to amend his complaint for a third time with no action taken regarding this request. App. Vol 1 at 217, 237(¶¶20, Email), Vol 2 at 56, 79 (¶¶13, 104).

On 05 June 2020, Plaintiff reach out to the CCRD in attempt to amend his complaint for a fourth time with no action taken regarding this request. App. Vol 1 at

217, 239(¶¶20, Email), Vol 2 at 56, 79 (¶¶15,104).

On 15 October 2020, CCRD emailed a first draft of any amended complaint. App. Vol 1 at 240 (¶Email). This was 314 day after the Plaintiff made his first request to amend his complaint on 6 December 2019. App. Vol 1 at 216, 233, 251 (¶15, Email, Amend Cmpl).

Plaintiff was informed by the CCRD that they could not amend his complaint with any additional claims due to them being time bared and they were out of the jurisdiction of the CCRD at that time. App. Vol 2 at 57 (¶17). Plaintiff was informed he had to file a new complaint with the EEOC for any additional charges due to the failure of the CCRD in not moving to amend the Plaintiffs complaint after the Plaintiff made numerous prior requests to the CCRD in doing so. App. Vol 1 at 242 (¶Email).

On 09 November 2020, Plaintiff tried to amend his complaint with the EEOC, but the CCRD still had jurisdiction of the Plaintiff's complaint and no further action could be taken until the CCRD removed itself from having jurisdiction. App. Vol 1 at 242 (¶Email).

On 11 November 2020, Plaintiff contacted the EEOC in regard to the amended charges Plaintiff wanted to file. App. Vol 2 at 57, 80, 123 (¶¶18, 106, A). An intake Interview was performed on 14 December 2020. App. Vol 2 at 80, 137 (¶¶107, 25).

Instead of offering to amend the initial complaint filed with the EEOC on 17 December 2019, Plaintiff was informed that he needed to draft and file a whole new complaint and submit it to the EEOC no later than 28 December 2020. App. Vol 2 at

80, 124 (¶¶107, 2).

Plaintiff drafted an official Charge of Discrimination which was notarized on 24, December 2020. App. Vol 1 at 166 (¶¶1075), Vol 2 at 137, 141 (¶¶27, Compl). Plaintiff submitted his notarized Charge of Discrimination to the EEOC on 28 December 2020. App. Vol 2 at 115 (Email).

## II.    PROCEDURAL BACKGROUND

**A. Administrative Proceedings.** Plaintiff filed a complaint with the CCRD, complaint # E2000007124. App. Vol 1 at 228.  A complaint was also filed with the EEOC, complaint # 32A-2020-00038 in conjunction with the CCRD complaint. App. Vol 1 at 228.  The EEOC and the CCRD are entered into a workshare agreement whereby each agency acts as the other's agent for the purpose of receiving and drafting employment discrimination charges. Rodriguez v. Wet Ink, LLC, 603 F.3d 810, 813 (10th Cir. 2010).

On 20 November 2020, both Plaintiff and Defendant received electronically a determination letter and Notice of Right-to-Sue (NRTS) which informed the Plaintiff he can pursue a civil action in a district court of the state of Colorado if he wishes to do so. App. Vol 1 at 252.  A Certificate of e-mail was provided to the Defendant. App. Vol 1 at 265.

On 14 December 2020, Plaintiff completed an intake Interview with the EEOC and was they informed the Plaintiff he needed to file another complaint.  App. Vol 2 at

80, 137 (¶¶107, 25).

On 28 December 2020, a second complaint was submitted and filed through the EEOC against the Defendant.  App. Vol 1 at 266.

On 9 February 2021, Plaintiff received in the mail a NRTS letter from the EEOC, # 32A-2020-00038, for his first claimed filed on 17 October 2019.  App. Vol 1 at 92.

On 4 May 2021, Plaintiff received electronically a NRTS Letter from the EEOC # 541202100309 for his second claim filed on 28 December 2020. App. Vol 1 at 93.

**B. District-court Proceeding.** On 7 May 2021, Plaintiff filed his complaint against the Defendant in the United States District Court for the District of Colorado, 86 days after receiving his first NRTS letter on 10 February 2021, App. Vol 1 at 92. and 3 days after receiving his second NRTS letter on 4 May 2021. App. Vol 1 at 93.

## III.    RULING PRESENTED FOR REVIEW

On 7 February 2023 the district court entered a 12-page Order and DISMISSED WITH PREJUDICE the Plaintiffs request for leave to amend his second complaint. App. Vol at 179.  In its Order, the district court concluded that "Where a complaint fails to state a claim, and no amendment could cure the defect, a dismissal sua sponte may be appropriate."… "If such dismissal operates on the merits of the complaint, it will also ordinarily be entered with prejudice." App. Vol 2 at 190.  On 7 February 2023 the district court also entered a 1-page FINAL JUDGMENT and DISMISSED the action WITH PREJUDICE. Vol 2 at 191.

## STANDARD OF REVIEW

This Court reviews de novo the district court's grant of final judgment. When reviewing a grant of final judgment, this Court must "consider[] all evidence in the light most favorable to the nonmoving party." See D.L. v. Unified Sch. Dist. No. 497, 596 F.3d 768, 772 (10th Cir. 2010).  Plaintiffs asserted violations of, inter alia, their natural and fundamental rights to be free of Discrimination, Harassment and Retaliation in the workplace and from Discrimination, Harassment and Retaliation for from pursuing one's civil rights, as protected by the Civil Rights Act governed by the United States Constitution—a violation that the United States District Court for the District of Colorado was well-appointed to adjudicate.

Instead of exercising its jurisdiction and adjudicating on its merits the Plaintiffs constitutional, federal, and state claims, the district court instead opted to dismiss jurisdiction under the fabrication and miss leading pleadings by the Defendant.  The district court's exercise of legal jurisdiction in this case ignores federal policy as well as Supreme Court and Tenth Circuit decisions against abstaining from deciding violations of one's fundamental rights, which violations will undoubtedly have an impermissible unsettling influence on those same rights of others.  By withdrawing so early in the case, the district court also failed to allow for the factual and legal development necessary to properly engage in an analysis of the claims for relief that the Plaintiff has brought forth.

The Defendants have made false statements that brought forth misleading assertions in their defense and the Defendants have acted deliberately with sound

knowledge that their claims present were knowingly false. This has misled the district court from the truth in its concluding a Final Judgement. The Defendants continuous core campaign of bad faith, deception and deflection go against fundamental rulings set forth by the Supreme Court and the Tenth Circuit. Federal courts are the primary tribunals for the vindication of constitutionally protected rights. With the passage of the Civil Rights Act, Congress further granted to the federal courts' jurisdiction over violations of individuals' federally guaranteed rights by state or local governments under the color of state law. See 42 U.S.C. § 1983.

## ARGUMENT

The district court erred in determining that it could not hear Plaintiffs claims for compensatory damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, Americans with Disabilities Act 42 U.S.C. §12101, 12203(a)and the handling of state anti-discrimination laws similar to the Colorado's Anti-Discrimination Act (CADA), Colo. Rev. Stat. § 24-34 because, in its view, the district court claimed that the Plaintiff did not exhaust his administrative remedies through the EEOC and CCRD administrative process. This Court should reverse for the following independent reasons.

## I.    The district court incorrectly dismissed the Plaintiff's claims for failure to exhaust administrative remedies.

In the Defendants Answer to Plaintiff's initial complaint on Count's I, III, IV as they pertain to the Plaintiffs Title VII and ADA claims, the Tenth Circuit has held

that the failure to properly exhaust administrative remedies in a Title VII and ADA context does not preclude the Court from exercising jurisdiction over the claims, but rather, can be raised as an affirmative defense. See Lincoln v. BNSF Ry. Co.  The purposes of a motion to dismiss [under Rule 12(b)(6)], [courts] must take all of the factual allegations in the complaint as true," Iqbal, 556 U.S. at 678, "[c]ourts are permitted to review 'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the document's authenticity.'" See Toone v. Wells Fargo Bank, N.A..

The Tenth Circuit has explained, "[w]hen an employee seeks judicial relief for incidents not listed in the original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." MacKenzie v. City & County of Denver.  Further, "an act committed by an employer in retaliation for the filing of an EEOC complaint is reasonably related to that complaint, obviating the need for a second EEOC complaint." See Ingels v. Thiokol Corp.  Several key dates, alleged infractions by the Defendant and factual attempts by the Plaintiff to exhaust his administrative remedies to amend his initial complaint which needs to be highlighted to paint a clear picture and to bare weight that the Plaintiff did indeed exhaust his administrivia remedies within his control in bring a suit in a district court.

A.      Defendant violated the Plaintiffs work restrictions with the punishment of

the Handwriting Incident App. Vol 1 at 161 (¶34). and has admitted to this act.  App. Vol 1 at 163 (¶39).

B.    Defendant retaliated against the Plaintiff and denied his WC claim, App. Vol 1 at 26, 57, 120, 167(¶¶52, 51, 40, 50). three days after the Plaintiff filed his complaint with the EEOC and CCRD. App. Vol 1 at 63. and after they have already accepted this injury as work related.  The Plaintiff's filing is a protective activity.  Playing any role in an internal investigation should be deemed to constitute protected participation and protected an employee from discrimination, harassment, or retaliation in doing so.  It is well settled that the participation clause shields an employee from retaliation regardless of the merit of his charge. See Sias v. City Demonstration Agency, 588.

C.    The Defendant cause additional harm to the plaintiff by subjecting him to a degrading and fruitless position of removing staples for over 6+ hrs a day, 5 days a week for two months. App. Vol 1 at 56 (¶54).

D.    On 9 December 2019, Defendant used the work restriction cause by the tasks of pulling's staples and the permanent injury resulting from the Handwriting Incident to place the Plaintiff on LWOP causing a financial hardship. App. Vol 1 at 123, 170, 216 (¶¶59, 59, 12).

E.    On 9 December 2019, Plaintiff contacted the CCRD to amend his Initial Complaint, App. Vol 1 at 216, 233 (¶15, Email) 50 days after he filed his Initial Complaint on 17 October 2019.

F.      On 23 January 2010, Defendant ignored a direct request to the Chief of the DFD for return to work in a position in which the Plaintiff was suitable of doing without accommodations. An act that has been presented to other employees in the past which these employees had more severe injuries than that of the Plaintiff. App. Vol 1 at 66, 88, 125, 171 181, 204 (¶¶66, 20, 66, 66, 121, 20).

G.      On 24 January 2020, the Defendant initiated the Interactive Process. Vol 1 at 124, 171 (¶¶64, 64)

H.      On 21 February 2020, Plaintiff reach out to the CCRD to amend his complaint again for the second time, App. Vol 1 at 217, 235 (¶17, Email), Vol 2 at 56 (¶¶11). 127 days from when the Plaintiff file his Initial complaint on 17 October 2019.

I.      On 28 February 2020, Defendant terminated the Plaintiffs Inter-Active Process, App. Vol 2 at 119 (Email) only 35 days into the IAP and prior to the 90 days required by law under the ADA, stating that the Plaintiffs medical disability disqualified him for further pursuit of the IAP even though the Plaintiff requested for the process to pursue.  Plaintiff responded to the Defendant stating "I wish to renew my request for reasonable accommodation for my Line of duty injury. There are several positions that I have recently found that fit my background and experience. Being that I am still a city employee, is there any support or services through the city after March 2, 2020 regarding accommodations for my Line of Duty Injury that the city provides me with my continued search of finding a job within the city?" App. Vol 2 at 119, (Email 2) Defendant has not raise one argument to the validity that this statement was false showing the truthfulness

16

of the Plaintiffs statement.  At midnight of 3 March 2020, Plaintiff's employment was terminated by the Defendant even after the Plaintiff clearly requested more time to remain employed with the City to continue the Interactive Process afforded to him under the ADA. 29 C.F.R. §§ 1614.203 and 1630.2.

J.    Plaintiff would reach out again to the CCRD for a third time on 28 May 2020, App. Vol 1 at 217, 237 (¶¶20, Email), Vol 2 at 56, 79 (¶¶13, 104). 225 days after the Initial Complaint was filed, and again for a fourth time on 5 June 2020, App. Vol 1 at 217, 239 (¶¶20, Email), Vol 2 at 56, 79 (¶¶15,104).  This was 232 days after the Initial Complaint was filed and 94 days after the las discriminatory retaliatory act made by the Defendant towards the Plaintiff.

Under the EEOC, an employee must file a charge of discrimination within 300 days of the date in which an incident occurred and under Colo. Rev. Stat. § 24-34 employee must file a charge of discrimination within 180 days of the alleged violation, to include attempt to amend a complaint. Also, under Colo. Rev. Stat. § 24-34, CCRD has to investigate a claim or retain jurisdiction over discrimination charges within 270-day.

This court needs to take into great consideration the multiple lawless acts pursed against the Plaintiff by the Defendant, the multiple attempts the Plaintiff tried to raise claims them with the CCRD in his attempt to amend his Initial Complaint. All these attempts were within the statute of limitations of each discriminatory act and through the proper administrative channels.  It is the failure of the administrative process that is being used against the Plaintiff in the argument that the Plaintiff failed to exhaust his

administrative remedies.  This has allowed the Defendant to raise the numerous affirmative defenses in the manner in which they have been argued in this case and where the failures of the administrative process and not at the direct hand of the Plaintiff.

**II.  Equitable tolling requires a party to satisfy two distinct elements which the Plaintiff has met.**

On 25 January 2016, in Menominee Indian Tribe of Wisconsin v. U.S., the US Supreme Court held that equitable tolling requires a party to satisfy two distinct elements: diligent pursuit of its rights and extraordinary circumstances beyond its control preventing timely filing.  The Plaintiff has clearly met these two requirements.

The Plaintiff, on four different occasions through emails and numerous phone calls attempted to amend his complaint with the CCRD meeting the first requirement that a party needs to diligently make pursuit of their rights. The CCRD finally responded with an amend complaint on 15 October 2020, 226 days after the last incident occurred in order to bring forth a claim.  The CCRD makes claim that all matter outside of the Initial Complaint were then timed barred and out of their jurisdiction which the Plaintiff does not contest.  However, the failures of the CCRD to address the Plaintiffs multiple requests to amend his complaint should not be grounds for an affirmative defense for failure to exhaust administrative remedies.  Also, the Plaintiff could not amend the complaint filed with the EEOC due to the workshare agreement between the EEOC and CCRD.

In several attempts, in the quest in pursuit of the Plaintiff rights, and at the

request of the CCRD, Plaintiff continued to provide additional facts regarding the claims made by the Plaintiff.  On 10 November 2020, Plaintiff emailed the CCRD additional information regards the Plaintiff claims Appl. Vol 1 at 242 (Email 1). Unknowingly the CCRD was making a final determination and without any further decision regarding a pending amended complaint, on 20 November 2020, both Plaintiff and Defendant received a determination letter in favor of the Defendants plea which also informed the Plaintiff he can pursue a civil action or NRTS in a district court of the state of Colorado if he wishes to do so. App. Vol 1 at 252.  A Certificate of e-mail was provided to the Defendant. App. Vol 1 at 265.

Because the CCRD failed to amend the complaint of the Plaintiff, this delayed the Plaintiffs ability to amend his complaint.  As stated previously in this brief, the Tenth Circuit has explained, "[w]hen an employee seeks judicial relief for incidents not listed in the original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." MacKenzie v. City & County of Denver.  Further, "an act committed by an employer in retaliation for the filing of an EEOC complaint is reasonably related to that complaint, obviating the need for a second EEOC complaint." See Ingels v. Thiokol Corp.

On 11 November 2020, Plaintiff contacted the EEOC regards to amended charges Plaintiff wanted to file. App. Vol 2 at 57, 80, 123 (¶¶18, 106, A).  An intake

Interview was performed on 14 December 2020.  App. Vol 2 at 80, 137 (¶¶107, 25).
But instead of amend his complaint, the EEOC instructed the Plaintiff on 9 December
2020 that a second complaint had to be filed giving and needed to be submitted by 28
December 2020. App. Vol 2 at 140.  Plaintiff's complaint should have been amended
by the EEOC instead of Plaintiff having to filing a second complaint causing additional
burden on the Plaintiff in bringing forth additional claims to a district court.  The failure
of the CCRD to amend the Plaintiffs initial complaint and the EEOC requiring the
Plaintiff to file a second EEOC charge instead of amending his initial complaint can
raise a strong argument that these extraordinary circumstances were beyond control of
the Plaintiff preventing a timely filing.

### III.    Defendant cannot cure Answer deficiency in their Reply Brief.

Under the General Rules of Pleading, to survive a Motion to Dismiss, a pleading
must be a short and plain statement of the grounds for the court's jurisdiction, unless
the court already has jurisdiction and the claim needs no new jurisdictional support; a
short and plain statement of the claim showing that the pleader is entitled to relief; and
a demand for the relief sought, which may include relief in the alternative or different
types of relief. See Rule 8(a) The Plaintiff's complaint had met this requirement.  Also,
a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'" See Ashcroft v. Iqbal, again requirements which
the Plaintiff's complaint had met.

The US Supreme Court has ruled that a complaint does not need to include a

demonstration that administrative remedies have been exhausted. See Jones v. Bock. However, courts should generally not depart from the Federal Rules' usual practice based on perceived policy concerns. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit.

In the Defendants Answer to Plaintiff's initial complaint on Count II, V and VI as they pertain to the Plaintiffs CADA claims, Defendants stated that "This Court Lacks Subject Matter Jurisdiction Over Counts II, V, and VI Because Plaintiff Did Not Secure A Timely Right To Sue Notice From The CCRD." App. Vol 1 at 192 (¶IV-A). The Defendant further claimed that the plaintiff did not contend that he timely filed a charge with, or received a right to sue letter, from the CCRD, which was claimed to be necessary to establish this Court's jurisdiction. Defendant cited Brooks v. Denver Pub. Sch., No. 17. App. Vol 1 at 192,(¶IV-A-1).

First this court needs to look at the overall context of Brooks v. Denver Pub. Sch., No. 17.  In the case of Brooks v. Denver, Mr. Brooks does not allege in his Complaint or assert in his response that he filed a discrimination charge with the CCRD because that act was never initiated.  Instead, Mr. Brooks argues that his charge with the EEOC exhausted his CADA claims.  In that case, the Plaintiff's response to the Motion to Dismiss, according to Mr. Brooks, because the EEOC and CCRD have a worksharing arrangement, he did not need to file a charge with both agencies.  The Court disagreed and explained that the CADA requires a plaintiff to file a charge with

the CCRD, not the CCRD or the EEOC. Colo. Rev. Stat. § 24-34-306(1)(a) (requiring a charge of discriminatory or unfair practices to be filed "with the division").  Not only are the Defendant statement in this case prudent but are also untrue and deflecting from the actual facts.

The Plaintiff filed a complaint with both the CCRD and the EEOC jointly. CCRD, complaint # E2000007124, EEOC, complaint # 32A-2020-00038. App. Vol 1 at 228 which the Defendant was aware of.  Also, not only did the Plaintiff and Defendant receive a notification from the CCRD of a NRTS letter from the CCRD, App. Vol 1 at 252. the Defendant received this notice via email which a Certificate of e-mail was provided to the Defendant. App. Vol 1 at 265.  The Defendant knowing and willing made false claims on facts already known in their affirmative defense that the Plaintiff did not receive a NRTS letter, only to miss lead the court of the true nature of the claim.

The Defendant also states the Plaintiff did not contend in his initial complaint that he exhausted his administrative remedy only to use that as an affirmative defense which the US Supreme Court has determine is not a requirement. See Jones v. Bock. The district court would use this to weigh on their decision of Motion for Final Judgement. App. Vol 2 at 179.  The district court also failed to recognize that extrinsic evidence may be considered part of a complaint when it is (1) attached to the pleading, (2) incorporated by reference in the pleading, or (3) the court deems the evidence integral to at least one claim in the pleading. See Bank of New York Mellon Trust Co.

22

v. Morgan Stanley Mortg.  A court can deem extrinsic evidence as part of pleading, such evidence may be considered without conversion.  See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd.

However, in this case, both parties were aware that administrative remedies were met with an issued determination letter and NRTS by the CCRD. The Defendant perfected their pleaded with this in their Answer stating that the Plaintiff did not receive a NRTS from the CCRD, given way to a single argument on that fact only that the Plaintiff did receive a NRTS form the CCRD.  Again, these are facts the Defendant had full knowledge of before that statement was made.  This claim set up the Plaintiff to simply respond by providing proof that a NRTS letter was received.  The Plaintiff felt there was no other arguments were needed for this claim in their response to the Motion to Dismiss pleading by the Defendant. App. Vol 1 at 211, 252  (¶¶Response, Det Ltr). In the Defendants Reply in their support for Motion to Dismissal, App. Vol 1 at 285, Defendant then for the first time raised the argument that the Plaintiff's claim where time bared and not timely which failed to exhaust administrative remedies to bring suit because there were beyond statute of limitation for this claim. App. Vol 1 at 288. Defendant rose this argument citing the case, Strike, LLC, v. Sandy Creek Farms, Inc. There is a striking contrast from the case the Defendant sited vs. the Plaintiffs pleading in this case.  In Strike, LLC, v. Sandy Creek Farms, Inc, the Plaintiff failed to disclose identities of individual directly involved in the case which were needed in supporting arguments to the Plaintiffs clams which was required by Rule 8 general rules of a

pleading.

In this case, the Defendant argues administration action and facts that were already privy to all parties in efforts to deny the Plaintiff the ability to bring argument to the timeliness of the CADA claims in reply since that opportunity was no longer available to the Plaintiff to argue the claim.

In addition, the District Court favored the Defendants knowing and willful false claims that the Plaintiff gave a notice of resignation of employment as an employee of the City and County of Denver.  The court stated "his constructive discharge accrued 'when [he] g[a]ve[] notice of his resignation' on February 27, 2020, when he emailed his chain of command with 'notice of his intent to take disability retirement' and his intent to 'end[] his DFD employment on March 2, 2020..'"citing Green v. Brennan. App. Vol 2 at 186 (¶2).  Green vs Brenna has no merit to be cited in affirmative defenses of reason for Motion to Dismiss or Final Judgement for following single reasons.

The Defendant argued a claim that a Plaintiff Cannot Cure His complaint Deficiencies in a Response to a Motion to Dismiss, Citing Qwest Commc'ns Int'l, Inc. App. Vol 1 at 287 (¶III-A). which the district court used to issue an Order on Final Judgement.  This claim should also bare weight when considering an Answer to a Complaint filed by a Defendant and what claims are made which with intention to depart from the truth and are considered misleading.  This court should hold the statements presented in that Answer by the Defendant to the same standards, more particularly on facts that are already know by a party and not pleaded on their merits.

The Defendant should not be able to cure their Answer Deficiencies in a reply brief.

**IV.    Defendant arguments are partial and misleading.**

In many of the cases cited by the Defendant in their arguments for a Motion to Dismiss, the cases cited are partial in nature or are not relevant to the respective claims of this case in whole.   These cited cases have only misled the district court in case review to give weight to the Order of Final Judgement.

For example, as stated early in this brief, Defendant cites Brooks v. Denver Pub. Sch., No. 17 and also Jackson v. City & Cty. of Denver, for not obtaining a NRTS letter from the CCRD in the request to dismiss Counts II, V, VI.  In Brooks v. Denver Pub. Sch., No. 17, the Plaintiff never filed with the CCRD.  However, within the four corners of this case, the Plaintiff did file with the CCRD. App. Vol 1 at 228.  In the case of Brooks v. Denver Pub Sch., No. 17, this claim is related to a single EEOC filing and has no mention of a CADA claim filed with the CCRD because the Plaintiff failed to file a complaint with the CCRD.  Though there is a workshare agreement between the two, an EEOC filing does not fulfill the exhaustion of administrative remedies through the CCRD.

Regarding the claims for relief found in Count I (VII Discrimination), Defendant asserted that this claim for relief is time barred because the wrongful discharge and termination of the Plaintiff's employment occurred outside of the 300 days for a Plaintiff to make a claim.  As previous mentioned in this complaint, the US Supreme Court has ruled that a complaint does not need to include a demonstration that

administrative remedies have been exhausted. See Jones v. Bock.  However, courts should generally not depart from the Federal Rules' usual practice based on perceived policy concerns. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit.  Plaintiff made numerous attempts to amend his complaint with the CCRD.  But because of the workshare agreement, the failure of the CCRD to allow an amended claim deprived the Plaintiff the ability to bring the claims in front of the EEOC because the CCRD still held jurisdiction.  The failures of the CCRD to address and amend the Plaintiffs claim at his request should not deprive the civil rights of any plaintiff to bring claims to a district court.

In the district court for Final Judgment, the district court cited Green v. Brennan supporting the argument that the Plaintiff gave notice of resignation in an email in which he was only informing his supervisor of his last day as a firefighter. App. Vol 2 at 186. Referencing the case of Green v. Brennan, on 16 December 2009, Green and the Postal Service signed an official agreement. This agreement stated that the Postal Service promised not to pursue criminal charges in exchange for Green's promise to leave his post in Englewood Colorado.  The agreement also gave Green a choice to either retire or report for duty in another city and state. Green chose to retire and submitted a resignation letter to the Postal Service.  The date that he made the decision to retire was the date his time to file a complaint began.

In this present case, Plaintiff and Defendant never discuss any agreement for retirement nor was there any formal written agreement signed and/or submitted by the

Plaintiff that has been reference in Green v Brennan. An acceptance for disability benefits from an outside party does not deprive an employee of their rights for accommodation for a work-related injury, and not to preclude accommodations if that injury was a direct a result of the gross negligence of an employer handing down a punishment. The defendant only makes broad allegations that the Plaintiff chose to end his employment as an employee of the City and County of Denver and has not provided a single letter of resignation, any accepted end of employment agreement, nor provide any other communication written or verbal or any other evidence of the claim that can give solid evidence the Plaintiff voluntary ended his employment. They have only cited an email that the Plaintiff used to inform his supervisor of the end of employment date that the Defendant had single handedly determined for the Plaintiff.

The Defendant also has not argued that they ignored numerous requests from the Plaintiff for other work positions which he could have performed without accommodations. This includes the request to continue the Interactive Process that should have been afforded to the Plaintiff which ended prematurely. If the Plaintiff really wanted to resign, he would have submitted a similar "Letter of Intent to Resign" letter like the one the Plaintiff had previous done when he found himself working under similar conditions in 2016. App. Vol 1 at 19, 51, 77, 91 (¶¶35, 29, 38, 33).

In regards to the claims for relief found under Count III and IV of the ADA (failure to accommodate and retaliation), the punishment handed down by the Administrative Lieutenant fell under the first EEOC charged which was timely filed

upon receipt of the NRTS letter from the EEOC. Plaintiff made numerous attempts to amend his complaint to plead all his related claims there after. Plaintiff would have filed a charge with the district court immediately after receipt of the first NRTS from the EEOC but plaintiff needed to wait for the second EEOC charge so the Plaintiff would have to file two separate complaints that were related to each other.

## CONCLUSION

The court needs to take into consideration the numerous baseless affirmative defenses the Defendant has taken to deflect from the true facts of this case and the timeliness pursuit by the Plaintiff to exhaust the administrative remedies required by this court. This Court should reverse the district court's decision and remand for proceedings on the merits of the Appellants Title VII ADA and CADA claims.

Respectfully submitted,*

 /s/ David Perez

David Perez, Pro Se' Plaintiff-Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument. Oral argument would aid the Court in clarifying what exhaustion under Title VII, ADA and CADA are required, as well as resolving the extent to which these protected Acts demands that plaintiffs seeking remedies unavailable under them and how they must exhaust with the administrative procedures, an answer confirmed by the Supreme Court in Menominee Indian Tribe of Wisconsin v. United States.

Respectfully submitted,*

 /s/ David Perez

David Perez, Pro Se' Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

1. I certify that this document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed.R. App. P. 32(f), this document contains 8,159 words.

2. I certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Garamond.

1 May 2023                                         /s/ David Perez

David Perez, Pro Se' Plaintiff-Appellant

## CERTIFICATE OF ELECTRONIC FILING

I certify that this document complies with all privacy redactions required by

10th Cir. R. 25.5, is an exact copy of the paper copies submitted to the U.S. Court of

Appeals for the Tenth Circuit and has been drafted and converted into searchable

PDF on a Macbook Pro which uses XProtect and Malware Removal Tool for

malware and virus protection.

1 May 2023                         /s/ David Perez

                                  David Perez, Pro Se' Plaintiff-Appellant

CERTIFICATE OF SERVICE

I certify that, on 1 May 2023, I electronically filed this Opening Brief of Appellant David Perez using the Court's CM/ECF system, which will send notification of its filing to the following people:

Charles Mitchell (Charles.Mitchell@denvergov.org),

and

Jonathan.Saadeh, (Jonathan.Saadeh@denvergov.org).


 /s/ David Perez
David Perez, Pro Se' Plaintiff-Appellant